**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MILEKE WILLIAMS,

          Plaintiff,

  - v -                Civ. No. 9:11-CV-826
                        (GLS/RFT)

E. FALKOWSKI, *Detective, Syracuse Police Department*,
J. BALLAGH, *Detective, Syracuse Police Department*,
CITY OF SYRACUSE, ONONDAGA COUNTY,

          Defendants.
_____

**APPEARANCES:**              **OF COUNSEL:**

**MILEKE WILLIAMS**
Plaintiff, *Pro Se*
124 Forest Ave, 1st Floor
Syracuse, New York 13205

**FOR THE CITY OF SYRACUSE DEFENDANTS:**
CITY OF SYRACUSE CORPORATION COUNSEL  AIMEE M. PAQUETTE, ESQ.
233 East Washington Street
Room 301 City Hall
Syracuse, New York 13202

**FOR DEFENDANT ONONDAGA COUNTY:**
ONONDAGA COUNTY ATTORNEY'S OFFICE  KAREN ANN BLESKOSKI, ESQ.
John H. Mulroy Civic Center
421 Montgomery Street, 10th Floor
Syracuse, New York 13202

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Mileke Williams brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth, Eighth, and Fourteenth Amendment rights. Dkt. No. 1, Compl. Defendant City of Syracuse, together with Detectives Falkowski and Ballagh (hereinafter

collectively referred to as "City of Syracuse Defendants"), as well as Defendant Onondaga County, have moved separately for Summary Judgment. Dkt. Nos. 33, Mot. for Summ. J. (hereinafter "Syracuse's Mot."), & 36, Mot. for Summ. J. (hereinafter "Onondaga's Mot."). Plaintiff opposes both Motions. Dkt. No. 42. For the reasons that follow we recommend that Onondaga's Motion be **GRANTED** and Syracuse's Motion be **GRANTED** in part and **DENIED** in part.

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings,*

*Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II. DISCUSSION

### A. Summary of Facts

The parties agree that Plaintiff was arrested on September 18, 2008, by Defendants Detective Ballagh and Detective Falkowski, in the 100 block of Richardson Avenue, in Syracuse, New York

and that the Defendants used physical force during the arrest. *See, e.g.*, Dkt. Nos. 33-10, Syracuse Defs.' Statement Pursuant to Local Rule 7.1 (hereinafter "Syracuse Defs.' 7.1 Statement"), at ¶¶ 1, 4, & 11–16; 36-4, Onondaga Defs.' 7.1 Statement at ¶¶ 1 & 2; 42, Pl.'s 7.1 Statement at ¶¶ 1 & 2. Beyond that, the parties' respective accounts of what transpired are widely divergent.

### 1. Plaintiff's Account

The following summary of Plaintiff's account is taken from his Deposition testimony. Dkt. No. 36-6, Mileke Williams Dep., dated May 30, 2012. At the time of his arrest, Plaintiff was sitting in the driver's seat of a vehicle parked on Richardson Avenue, with the front windows down, listening to music with two young acquaintances from the neighborhood, who were standing on the street on the passenger side of the vehicle. *Id.* at pp. 11–12, 15–17, & 19. In his left hand, concealed by the sleeve of his jacket, Plaintiff had a clear plastic bag containing approximately seven grams of cocaine. *Id.* at pp. 20–22.

A car pulled up alongside of Plaintiff's vehicle, and two Police Officers (later identified as Defendants Ballagh and Falkowski) exited the vehicle. *Id.* at p. 22. Without saying anything, Defendant Ballagh grabbed Plaintiff's left hand, opened Plaintiff's driver-side door, pulled Plaintiff out of the vehicle, and ordered him to place his hands on the vehicle. Before Plaintiff could comply, Defendant Ballagh, using a "kung-fu" move, pulled Plaintiff's hands behind his back. *Id.* at pp. 22–24. Defendant Falkowski then came around the other side of the vehicle and asked Plaintiff why he was resisting.[1] Defendant Ballagh asked Plaintiff what was in his hand, and Defendant Falkowski

---

[1] Plaintiff makes several different statements regarding whether, and to what degree, he resisted arrest. At times he characterizes his resistence as "active[]," Dkt. No. 42-1, Pl.'s Mem. of Law, at p. 2, while in other instances he states that he "may have been slightly hesitant in [i]mmediately [r]esponding to the City defendants [i]nitial order to place his hands on the hood of the car," *Id.* at p. 6. However, Plaintiff claims that he only resisted when officers attempted to handcuff him initially, and he downplays that resistence claiming that he was "look[ing] sideways and stuff like that .
(continued...)

-4-

warned Plaintiff that if he did not stop resisting he was going to tase him. Plaintiff replied that he had nothing in his hands and Defendant Falkowski tased Plaintiff. *Id.* at pp. 25–26. Somehow Defendant Ballagh's finger ended up in Plaintiff's mouth and although Plaintiff never closed his mouth, Defendant Ballagh screamed "he bit me." Defendant Falkowski tased Plaintiff again, and Plaintiff fell to the ground. Defendant Falkowski then tased Plaintiff twice more while he was lying flat on his stomach with Defendant Ballagh on top of him. *Id.* at pp. 26–27. At that time, the bag of cocaine fell from Plaintiff's hand and one of the officers hit Plaintiff and started to punch him in the face. *Id.* at pp. 29–30.

During the altercation, a "large crowd" of people gathered and called for the officers to stop "beating" Plaintiff. One of the Defendants pulled his gun and ordered the crowd to get back. Thereafter, other officers arrived at the scene. Plaintiff was handcuffed behind his back, and put in the back of a police car. *Id.* at pp. 34–35 & 40. An unidentified police officer then drove Plaintiff a few blocks to the parking lot of Danforth Elementary School and parked the car. Thereafter, Defendant Falkowski arrived, got into the back of the police car with Plaintiff and began punching Plaintiff, and telling him that he was going to "beat" him. *Id.* at pp. 39–45. An emergency medical team then came and examined Plaintiff and he was taken to the Police Station.

### 2. Defendants' Account

Defendants' account is a summary of Defendant Falkowski's and Ballagh's respective Affidavits. *See generally* Dkt. Nos. 33-6, Edward Falkowski Aff., dated Sep. 11, 2012, & 33-7, Jeffrey Ballagh Aff., dated Sep. 11, 2012.

According to Defendants, upon arriving at the 100 block of Richardson Avenue they heard

---

[1](...continued)
. . if you call[] that resisting." *See* Williams Dep. at pp. 24–26 & 37.

loud music emanating from Plaintiff's vehicle, which they believed violated the City's sound ordinance. Defendant Ballagh screamed to Plaintiff "[l]et me see your hand," then he grabbed Plaintiffs left wrist, and Plaintiff began to struggle. Falkowski Aff. at ¶¶ 3–7; Ballagh Aff. at ¶¶ 3–7. After Defendant Ballagh pulled Plaintiff from the vehicle, Plaintiff hit him in the face with his elbow and began to "violently resist . . . throwing punches . . . as he tried to flee." Falkowski Aff. at ¶¶ 7–8; Ballagh Aff. at ¶¶ 7–8. Detective Falkowski warned Plaintiff he would be tased if he did not stop resisting, but Plaintiff continued to resist anyway. Defendant Falkowski then tried to tase Plaintiff but was unsuccessful because Plaintiff kicked him. Falkowski Aff. at ¶¶ 8–9; Ballagh Aff. at ¶ 9. Plaintiff was then "taken to the ground, where he continued to violently struggle" with both Detectives, causing Detective Ballagh to punch Plaintiff in the face several times. Falkowski Aff. at ¶ 10; Ballagh Aff. at ¶ 10. Detective Falkowski attempted to tase Plaintiff five more times, but was "unsuccessful due to [Plaintiff]'s violent struggle." Falkowski Aff. at ¶ 12. At some point Defendant Falkowski dropped his Taser and while attempting to retrieve it Plaintiff bit his finger, but did not injure him. Falkowski Aff. at ¶ 13; Ballagh Aff. at ¶ 11. After he regained his Taser, Defendant Falkowski was struck in the face by Plaintiff, and he punched Plaintiff in the face. Ultimately, Detective Falkowski recovered his Taser and was able to successfully tase Plaintiff at least four times. Falkowski Aff. at ¶ 15. Thereafter, Plaintiff was placed in handcuffs. Falkowski Aff. at ¶ 16; Ballagh Aff. at ¶ 13.

Then, "[i]n order to remove [Plaintiff] from the unruly crowd[2] to obtain information, he was transported in a police vehicle to the parking lot of nearby Danforth Elementary School." Falkowski

---

[2] During the altercation, a large crowd had gathered and was shouting obscenities at the officers. At least one of the crowd members, Luis Wright, was arrested for obstructing governmental administration; however, most backed off after backup arrived. Falkowski Aff. at ¶ 17; Ballagh Aff. at ¶¶ 11–13.

Aff. at ¶ 18; Ballagh Aff. at ¶15. Detective Falkowski got in the back seat of the police car with Plaintiff. While in the police car, Falkowski had to push Plaintiff's face away because he thought Plaintiff was going to spit on him. Falkowski Aff. at ¶¶ 18 & 21. Defendant Falkowski threatened to "beat" Plaintiff at that time. Defendant Ballagh then removed Defendant Falkowski from the vehicle. Falkowski Aff. at ¶ 22; Ballagh Aff. at ¶ 16. Thereafter, Plaintiff was arrested for criminal possession of a controlled substance in the third, fourth and seventh degree, resisting arrest, second degree assault, and sound reproduction, and taken to the Police Station for booking. Falkowski Aff. at ¶ 23; Ballagh Aff. at ¶ 17. At the Station, Plaintiff "apologized to [Defendant Falkowski] for resisting arrest." Falkowski Aff. at ¶ 24. Both Officers received treatment for minor injuries. Falkowski Aff. at ¶ 26; Ballagh Aff. at ¶ 18.

### B. Plaintiff's Claims

Plaintiff claims that (1) Defendants Ballagh and Falkowski used excessive force against him during his arrest in violation of the Fourth, Eighth, and Fourteenth Amendments, (2) municipal Defendants City of Syracuse and Onondaga County ratified and condoned their use of excessive force through their failure to train and supervise their employees, and (3) all of the Defendants conspired to violate Plaintiff's equal protection rights under 42 U.S.C. § 1985(3) and the equal protection clause of the Fourteenth Amendment because of their racial animus towards him, a black man. *See* Compl.

#### 1. Excessive Force

The Supreme Court has made clear that a claim of excessive force during the course of an arrest, investigatory stop, or other seizure of one's person is properly analyzed under the Fourth Amendment's "objective reasonableness" standard, wherein a court balances "the nature and quality

of the intrusion on the individual's Fourth Amendment rights against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 394-96 (1989). The Eighth Amendment standard "applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions;" i.e., during the post-conviction stages. *Id.* at 398. Whereas the substantive due process rights provided by the Fourteenth Amendment apply only in situations where the protections provided by the Fourth and Eighth Amendments are not applicable. *County of Sacramento v. Lewis*, 523 U.S. 833, 844–45 (1998). Here, Plaintiff complains of abuses that occurred during his arrest and are properly analyzed under the Fourth Amendment. Therefore, we recommend that to the extent Plaintiff has attempted to raise an Eighth or Fourteenth Amendment excessive force claim, that they be **DISMISSED**.

When analyzing a Fourth Amendment excessive force claim, the pertinent question is whether government officials acted reasonably "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor et al.*, 490 U.S. at 397 (citations omitted). Thus, the inquiry is an objective one that analyzes whether a reasonable officer would have acted similarly under the same specific facts and circumstances, including the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

The record before us consists largely of affidavits, depositions, and police reports proffered by the parties in support of their materially divergent accounts of the events of September 18, 2008. These documents present a classic factual dispute regarding the circumstances of Plaintiff's arrest. In large part, Defendants hang their hat on the fact that Plaintiff has admitted to resisting arrest. Dkt.

No. 33-11, Syracuse Defs.' Mem. of Law at pp. 9–15. While it is true that Plaintiff has admitted to "resisting," his definition of resistence differs greatly from that of the Officers. Whereas he vacillates between characterizing his resistance as active or slight and claims that he only "resisted" initially, Defendants claim that he violently struggled with them throwing kicks and punches in an attempt to flee. *Compare* Pl.'s Mem. of Law at pp. 2 & 6, & Williams Dep. at pp. 24–26 & 37; *with* Falkowski Aff. at ¶¶ 8–16, and Ballagh Aff. at ¶¶ 7–11 & 18. Moreover, although Plaintiff was charged with resisting arrest and assault, he was neither convicted of, nor pled guilty to, either charge. *See* Dkt. No. 36-24, Ex. T; Compl. at p. 4-A, & ¶¶ 2 & 6; *see also* Dkt. No. 33-4, Plea Hr'g Tr., dated Feb. 17, 2009, at pp. 3–4 & 9–10.

Resolution of the instant case requires a trier of fact to assess the credibility of each account and make a determination as to which parties' account is more believable; this is precisely the type of credibility assessment that this Court has been expressly prohibited from engaging in. *See Scott v. Coughlin*, 344 F.3d at 289; *see also Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Therefore, because we are unable to adjudge the reasonableness of Defendant Falkowski's or Defendant Ballagh's actions, we recommend that Summary Judgment be **DENIED** as to Plaintiff's Fourth Amendment excessive force claims against them.

Likewise, Plaintiff's allegation that Defendant Falkowski punched him in the face twice in the parking lot of the Danforth Elementary School presents a similar question of fact. Certainly, a reasonable juror crediting Defendant Falkowski's version of events could conclude that, under the circumstances, pushing an arrestee's face away because he was attempting to spit in the officer's face, was not an excessive use of force. *See* Falkowski Aff. at ¶¶ 18–22. However, it would be equally reasonable for a juror crediting Plaintiff's account to find that punching Plaintiff in the face,

while his hands are cuffed behind his back and he is not presenting a threat to the officer, was patently excessive. *See* Williams Dep. at pp. 40–46. Therefore, we recommend that Syracuse's Motion be **DENIED** as to this claim as well.

## 2. Monell Claim

It is well-settled that a claim of negligent training or supervision under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978), lies against a municipality only where there is a finding of a constitutional violation by one of its officers. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994). To show that a municipality, through its failure to train or supervise employees, has violated § 1983, three requirements must be met. *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992). First, the municipality's policy maker must know "'to a moral certainty' that [his or] her employees will confront a given situation." *Id*. (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). Second, either the situation must present the employee with the sort of difficult decision that training or supervision would ameliorate or there is "a history of employees mishandling the situation." *Id*. Finally, it must be shown that the "wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id*. at 298.

Furthermore, "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993). Evidence of an unconstitutional action by a police officer will not, on its own, be enough to prove that the training program the officer received was

inadequate, let alone prove that any inadequacy was a result of a city's deliberate indifference. *Carnegie v. Miller*, 811 F. Supp. 907, 911 (S.D.N.Y. 1993). "Deliberate indifference means that the city made a 'deliberate choice' not to train its employees from among various alternatives." *Pawlicki v. City of Ithaca*, 1996 WL 705785, at \*2 (N.D.N.Y. Dec. 5, 1996) (citing *City of Canton v. Harris*, 489 U.S. at 389). "Such deliberate indifference may be inferred from a failure to supervise: from proof of repeated complaints of constitutional violations that 'are followed by no meaningful attempt on the part of the municipality to investigate or forestall further incidents.'" *Velasquez v. City of New York*, 960 F. Supp. 776, 783 (S.D.N.Y. 1997) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). However, liability will not attach unless the training inadequacy is closely related to the ultimate injury. *Pawlicki v. City of Ithaca*, 1996 WL 705785, at \*2. Plaintiff must show that he suffered a constitutional injury. *Azzam v. The Travelers Ins. Co.*, 2000 WL 151906, at \*4-5 (N.D.N.Y. Jan. 28, 2000).

Here, Plaintiff alleges that the municipal Defendants, City of Syracuse and Onondaga County, "acted as final decision makers . . . by adopting, ratifying, failing to correct, and approving the actions of the defendant police officers E. Falkowski and J. Ballagh." Compl. at Second Claim. Defendants argue that Plaintiff has failed to allege facts that support even an inference that any custom or policy of theirs caused his alleged constitutional injuries. *See* Dkt. No. 36-43, Onondaga Def.'s Mem. of Law at pp. 3–6; Syracuse Defs.' Mem. of Law at pp. 15–18. We agree.

Beginning with Plaintiff's claims against the Syracuse Defendants, we note that these claims stem from the actions of two, non-policy level employees of the Syracuse Police Department[3] during a single event. *See generally* Compl.; *see also* Dkt. No. 36-38, Pl.'s Resp. to Defs.' Req. for

---

[3] The Syracuse Police Department is not a named Defendant in this action.

Interrogs., at ¶¶ 9 & 19.  Such allegations alone, are insufficient to raise an inference that a custom or policy condoning the use of excessive force existed, or that the City of Syracuse failed to train its employees with deliberate indifference.  *See Dwares v. City of New York*, 985 F.2d at 100; *Carnegie v. Miller*, 811 F. Supp. at 911.  Nor does Plaintiff present any evidence which raises a genuine issue of material fact as to whether there was a pattern of similar constitutional abuses by the Syracuse Police Department.  Plaintiff only vaguely alludes to similar situations, such as "[t]he guy who got hit by the police car" and "[t]he situation that happened in Clay or Cicero when the boy got ta[s]ed," but fails to provide any details about these incidents or how they are similar to the events in the instant case.  Williams Dep. at pp. 50–51.  Plaintiff goes on to admit that most of these alleged incidents don't even involve the Syracuse Police, and that he does not know what happened as a result of those incidents.  *Id.* at p. 51.  Such allegations do not demonstrate a pattern of constitutional abuse, *See also Dwares v. City of New York*, 985 F.2d at 100, or that the Syracuse Defendants failed to take meaningful remedial action to rectify any such abuses, *see Velasquez v. City of New York*, 960 F. Supp. at 783.  Therefore, we recommend that Syracuse's Motion be **GRANTED** as to this claim.

Likewise, Plaintiff's allegations against Defendant Onondaga County are even more nebulous.  To begin with, the City of Syracuse and the Syracuse Police Department are distinct and separate entities from the County of Onondaga.  Moreover, Onondaga County does not play a role in regulating the Syracuse Police Department.  *See* Dkt. No. 42-3, Pl.'s Ex. H, at p. 2; Pl.'s Mem. of Law at p. 4.  Therefore, because the County played no role in the promulgation of policies under which the officer's conduct was regulated, Plaintiff cannot establish that the force used by the officers "resulted from [a] custom or policy" of Onondaga County.  *Vann v. City of New York,* 72

F.3d at 1049; *City of Canton v. Harris*, 489 U.S. at 389.

Moreover, to the extent that Plaintiff alleges that he was injured by the Onondaga County's District Attorneys' policy of covering up the alleged civil rights abuses and failing to prosecute Defendants Falkowski and Ballagh, such claim also must fail. *See* Compl. at p. 4-A; , Pl.'s Resp. to Defs.' Req. for Interrogs., at ¶¶ 13–17 & 19. Even assuming that such a violation constitutes a constitutional injury, there is no proof that the District Attorney's Office was even aware of Plaintiff's allegations against the City of Syracuse or against Officers Falkowski and Ballagh. In fact, "Plaintiff admits that at no time from the date of his a[rr]est through the completion of [the c]riminal [p]roceeding[s] did Plaintiff or his Attorney advise the District Attorney['s] [O]ffice that the Syracuse Police used excessive force and assaulted Plaintiff during [his] arrest." Pl.'s 7.1 Statement at ¶ 24; *see also* Pl.'s Resp. to Defs.' Req. for Interrogs., at ¶¶ 11–12 & 16.

Rather, he claims that the District Attorney's Office was put on notice through the notice of claim he filed with the Secretary of State against the City of Syracuse, the citizen's complaint report he filed with the City of Syracuse, and/or the Syracuse Police Department's Internal Affairs Investigation report on the incident. *See* Pl.'s Mem. of Law at pp. 3 & 10; Pl.'s Resp. to Defs.' Req. for Interrogs., at ¶¶ 11–12 & 16. However, there is no evidence to suggest that Defendant Onondaga County or its employees ever received a copy of the citizen's complaint, notice of claim, or the Internal Affairs report. Dkt. Nos. 36-2, William J. Fitzpatrick, Esq. Aff., dated Sep. 21, 2012, at ¶¶ 4–7; & 36-3, Bridget S. Thompson, Esq. Aff., dated Sep. 21, 2012, at ¶¶ 16–18. Indeed, it appears from the record that the only documents regarding the incident that the Onondaga County District Attorney's Office received were the police reports and charging documents supporting the charges against Plaintiff. Thompson Aff. at ¶ 3.

Significantly, those documents would not have put Onondaga County on notice of Plaintiff's claims because they only contain Defendant Falkowski's and Defendant Ballagh's versions of the relevant events. Those versions fully support the reasonableness of the force used by Defendants Falkowski and Ballagh, and omit altogether the events which occurred behind Danforth Elementary School. Thompson Aff. at ¶¶ 3 & 14; *see also* Dkt. Nos. 36-7, Accusatory Instruments, & 36-8, Syracuse Police Reports. Thus, no reasonable juror could conclude that any policy, procedure, or custom of Onondaga County was responsible for the failure to prosecute Defendants Falkowski and Ballagh for the alleged use of excessive force, because neither Onondaga County nor its employees had any knowledge or notice of any such claim. Moreover, just like above, there is no evidence to suggest that there was a pattern or custom of such failures. Pl.'s Resp. to Defs.' Req. for Interrogs., at ¶ 18.

For these reasons, we recommend that both Defendants, Motions to Dismiss Plaintiff's Monell claims be **GRANTED**.

### 3. Conspiracy

Plaintiff contends that the Defendants conspired to deny Plaintiff his constitutional right to equal protection under the Fourteenth Amendment in violation of the equal protection clause of the Fourteenth Amendment and 42 U.S.C. § 1985. Compl. However, this claim must fail because no question of fact exists as to whether a conspiracy or an equal protection violation actually occurred.

Pursuant to 42 U.S.C. § 1985 (3)

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . , if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the

*-14-*

> party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with (3) "an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted). "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dep't. of Corr. Servs.*, 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000) (citations omitted). A claim of conspiracy under this subsection must include more than conclusory allegations. *Dwares v. City of New York*, 985 F.2d at 99-100. Thus, to recover damages under § 1985, Plaintiff must allege facts from which purposeful discriminatory intent can be inferred. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 390-91 (1982) (cited in *Hill v. Philip Morris USA*, 2004 WL 1065548, at *4 (S.D.N.Y. May 11, 2004)); *see also Hill v. Philip Morris USA*, 2004 WL 1065548, at *4 (quoting *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990), for the proposition that in order to state a claim under § 1985(3), a plaintiff "must allege, *inter alia*, that the defendants who allegedly conspired sought, with *discriminatory intent*, to deprive the plaintiff of a right covered by the Constitution or other laws" (emphasis in original)).

Plaintiff has wholly failed to meet his burden in this regard. In fact, Plaintiff only states that the Defendants conspired; he provides no other facts or circumstances from which this Court can surmise that any such conspiracy occurred. *See Dwares v. City of New York*, 985 F.2d at 99-100.

Nor does Plaintiff raise a triable issue of fact as to the existence of racial animus or disparate treatment.

Plaintiff's allegation that Defendants' behaviors were racially motivated is wholly conclusory. Plaintiff's claim is largely, if not entirely, based on the fact that he, a black man, was arrested by two white men, in an "all black area" that the police had deemed a "high crime area." Pl.'s Mem. of Law at p. 13. However, when asked directly if Defendants Ballagh and Falkowski used any "racial slurs" during the course of the arrest, Plaintiff states that "I mean, they were just like stereotyping me. I don't know what he meant. It could have been because of my race or if I was a drug addict, anything. He just said it's because of people like you." Williams Dep. at p. 54. As Plaintiff's admission illustrates, where even he does not "know" what the officer "meant" by his comment "it's people like you," no reasonable trier of fact could conclude that such a statement, or the fact that he was arrested in a high crime area, proves the Defendants acted with racial animus.

To state an equal protection claim, a claimant must show that a government actor intentionally discriminated against them on the basis of race, national origin or gender. *See Maher v. Roe*, 432 U.S. 464, 470 (1977); *see also Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) ("To prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class.") (quoted in *Verdal v. Frantz*, 2002 WL 31309175, at *3 (N.D.N.Y. July 31, 2002)). In *Hayden v. Cnty. of Nassau*, 180 F.3d 42 (2d Cir. 1999), the Second Circuit explained that such intentional discrimination could be demonstrated in several ways:

> First, a law or policy is discriminatory on its face if it expressly classifies persons on the basis of race or gender. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213, 227-29, 115 S.Ct. 2097, 2105, 2112-14, 132 L.Ed.2d 158 (1995). In addition, a law which is facially neutral violates equal protection if it is applied in a discriminatory fashion. *See Yick Wo v. Hopkins*, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 1072-73, 30 L.Ed. 220 (1886). Lastly, a facially neutral statute violates equal

protection if it was motivated by discriminatory animus and its application results in a discriminatory effect. *See Vill. of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 264-65, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).
*Hayden v. Cnty. of Nassau*, 180 F.3d at 48.

Although Plaintiff, an African American, is clearly a member of a suspect class, he has not alleged circumstances where similarly situated persons (arrestees of other races) were treated differently. In order to state a claim for a violation of equal protection rights, "it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 193 (2d Cir. 1994) (cited in *Tookes v. Artuz*, 2002 WL 1484391, at *2 (S.D.N.Y. July 11, 2002)). Here, Plaintiff offers no evidence of disparate treatment, instead Plaintiff offers only conclusory allegations such as "[h]ad this incident took place under the same circumstances in a white neiborhood [sic] Involving a white person, The City defendants wouldnot [sic] have conducted them selfs [sic] in this Hostile and unreasonable manner [sic]," Pl.'s Mem. of Law at p. 13, and "[u]pon information and belief, there have been numerous other [] physical injuries inflicted on other Black American citizens by Syracuse City Police in the past which the defendant [] are aware of and have refused to or failed to correct," Compl. at p. 4-B. Such allegations are far too conclusory to establish disparate treatment.

Therefore, we recommend that Defendants' Motions for Summary Judgment as to Plaintiff's conspiracy and equal protection claims be **GRANTED**.

### C. Qualified Immunity

The Syracuse Defendants argue that Detectives Falkowski and Ballagh are entitled to qualified immunity as against Plaintiff's excessive force claims. Syracuse Defs.' Mem. of Law at pp. 23–27. We disagree.

The doctrine of qualified immunity shields public officials from suit for conduct undertaken

*-17-*

in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988). A party is entitled to summary judgment on qualified immunity grounds if the court finds that the rights asserted by the plaintiff were not clearly established, or that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[], could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997) (citations omitted).

In the context of police officers, a court should find that an officer has acted in an objectively unreasonable manner "when no officer of reasonable competence could have made the same choice in similar circumstances." *Id.* (citing *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995)). It follows then that if a rational jury would find "that reasonable officers would disagree about the legality of the defendant's conduct under the circumstances," then that officer is entitled to summary judgment on the basis of qualified immunity. *Id.* (citations omitted).

However, because we have found that a genuine issue of material fact exists as to what the precise circumstances surrounding Plaintiff's arrest were in this case, it would be premature for us to conclude that reasonable officers could disagree about the reasonableness of the force used by Defendants Falkowski and Ballagh.

Therefore, we recommend that Defendants' Motion for Summary Judgment be **DENIED** on this ground. However, we further note that nothing in this recommendation should prevent Defendants from re-raising this defense after these issues of fact have been properly resolved by a

trier of fact.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Syracuse Defendants' Motion for Summary Judgment (Dkt. No. 33) be **GRANTED** in part, and **DENIED** in part as follows:

> 1) **DENIED** as to Plaintiff's Fourth Amendment excessive force claims against Defendants Falkowski and Ballagh;
> 2) **DENIED**, without prejudice, as to Defendants Falskowski's and Ballagh's qualified immunity defenses;
> 3) **GRANTED** as to Plaintiff's Eighth and Fourteenth Amendment excessive force, conspiracy, *Monell*, and equal protection claims against the Syracuse Defendants; and it is further

**RECOMMENDED**, that the Defendant Onondaga County's Motion for Summary Judgment (Dkt. No. 36) be **GRANTED** in its entirety; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: September 4, 2013
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge